# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CA-00559-SCT

*IN RE: THE ESTATE OF TARRANCE DAVIS,*
*DECEASED: JOHN FIZER, JR. AND ROSALIND*
*FIZER, AS NEXT FRIENDS AND GUARDIANS OF*
*RICO DAVIS, A MINOR; AND NANCY KOSSMAN, AS*
*GUARDIAN AD LITEM OF RICO DAVIS, A MINOR*

*v.*

*MARY LOUISE DAVIS*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/18/94 |
| TRIAL JUDGE: | HON. JON M. BARNWELL |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | PAULINE SHULER LEWIS |
| | KENNETH CHARLES MILLER |
| | MICHAEL T. LEWIS |
| ATTORNEY FOR APPELLEE: | JOHN H. COCKE |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS AND ESTATES |
| DISPOSITION: | REVERSED AND REMANDED - 2/5/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/18/98 |

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. This matter is before the Court on the sole issue of whether an unborn fetus, who was at six and one-half months gestation at the time of his brother's death, is among that class of persons defined as "living" for purposes of the wrongful death statute such that he is a beneficiary under the statute. We hold that he is, and accordingly reverse and remand.

### I.

¶2. Tarrance Davis was born July 10, 1986, and died on January 15, 1988, after suffering permanent brain damage produced by a traumatic birth. A law suit was filed against the Senatobia Community Hospital and various doctors for medical negligence. *See* **Senatobia Community Hospital v. Orr**, 607 So. 2d 1224 (Miss. 1992).

¶3. Prior to the above suit, a petition was filed requesting a determination of the heirs of Tarrance Davis by the Chancery Court of Tunica County. On April 23, 1991, the chancellor issued an order identifying Tarrance Davis' sole heirs at law:

> That at the time of his death on January 15, 1988, Tarrance Davis, was a minor whose sole surviving heirs at law, pursuant to Miss. Code Ann., Section 11-7-13 (Supp. 1984) are (1) his mother, Mary Louise Davis; (2) his brother, Andre Davis; and (3) his brother, Kenny Davis. Rico Davis, another brother, was born after the death of Tarrance Davis and, accordingly, is not an heir of the decedent nor a wrongful death beneficiary. His purported father, Terry Spade, has never filed any action to legitimate the relationship and over one year has passed from the date of death of Tarrance Davis.

¶4. The wrongful death beneficiaries and heirs of Tarrance Davis subsequently negotiated a settlement with the defendant hospital and doctors in the amount of $52,000. On April 16, 1993, the chancellor issued an order authorizing the administrator of the estate of Tarrance Davis to settle and pay attorneys' fees and expenses, and to distribute the balance of the settlement to Mary Louise Davis and her two minor sons, Andre and Kenny.

¶5. Rico Davis was born March 29, 1988. John and Rosalind Fizer were awarded custody and appointed as guardians of Rico Davis on August 27, 1993, although the Fizers had provided care for the child prior to gaining legal custody. On October 8, 1994, the Fizers filed a petition to determine, once again, the heirs and wrongful death beneficiaries of the deceased Tarrance Davis. On October 18, 1994, the court decreed that Rico Davis was an heir to the estate of the deceased Tarrance Davis, but that Rico Davis was not a wrongful death beneficiary within the meaning of the wrongful death statute. The ruling was based on the language of Miss. Code Ann. § 11-7-13, which provides that "if the deceased has no husband, nor wife, nor children, the damages shall be distributed equally to the father, mother, brothers and sisters, or such of them as the deceased may have living at his or her death." The court stated in its decree that the distributions previously made by the administrator would be considered reaffirmed unless any pleadings were filed within ten days requesting a change.

¶6. On October 26, 1994, the Fizers, along with Nancy Kossman, guardian ad litem of Rico Davis, filed an objection to the order which authorized settlement of the wrongful death claim. This objection was overruled and a Final Decree entered on May 12, 1995. A notice of appeal to this Final Decree was filed May 16, 1995.

## II.

¶7. In actions for wrongful death, Miss. Code Ann. § 11-7-13 (Supp. 1997) provides:

> . . . if the deceased has no husband, nor wife, nor children, the damages shall be distributed equally to the father, mother, brothers and sisters, or such of them as the deceased may have living at his or her death.

Based upon this language, the chancery court found that Rico Davis was not "living" within the meaning of the wrongful death statute, and thus was not a wrongful death beneficiary. The court defined "living" under the statute as a viably born living individual.

¶8. The Fizers argue that there is no legal foundation for defining "living" under the wrongful death statute as being a viably born living individual. They contend that Rico Davis was living, and that the test under *Rainey v. Horn*, 221 Miss. 269, 72 So. 2d 434 (1954), controls whether Rico Davis was living at the time of his brother's death. The Fizers also argue that failure to classify Rico Davis as a wrongful death beneficiary is contrary to the protections typically afforded the unborn under the common law.

¶9. Whether "living" is defined as a viably born living individual has not been expressly addressed in our case law in the context of beneficiary status under the wrongful death statute. However, the appellants emphasize that a wrongful death action can be maintained for the death of an unborn child that reaches the prenatal age of viability. In *Rainey,* 221 Miss. 269, 72 So. 2d 434, this Court stated:

> The broad principles of the common law embrace the subject of our inquiry in this case. We find no sound reason why we should withhold the processes of the law from an unborn child that has reached the prenatal age of viability when it is capable of a separate and independent existence from its mother. Such child is entitled to the protection of its person.

> We hold, therefore, that an unborn child, after it reaches the prenatal age of viability when the destruction of the life of its mother does not necessarily mean the end of its life also, and when, if separated from its mother would be so far a matured human being that it would live and grow mentally and physically, is a person; and if such child dies before birth as the result of the negligent act of another, an action may be maintained for its death under the wrongful death statute.

*Id.,* 221 Miss. at 283, 72 So. 2d at 439-40. The vast majority of states are in accord with the holding in *Rainey,* allowing recovery for wrongful death of a fetus in utero if the fetus has reached the stage of viability. *See Farley v. Sartin,* 466 S.E.2d 522, 528 n.13 (W.Va. 1995) (providing a comprehensive list of thirty-seven jurisdictions that recognize a wrongful death cause of action for viable fetuses).

¶10. Mary Louise Davis, the appellee, argues that at common law a cause of action did not survive the death of an injured party. *See Gentry v. Wallace*, 606 So. 2d 1117, 1120 (Miss. 1992) (reviewing history of the wrongful death cause of action). Davis cautions that since the wrongful death statute is in derogation of the common law, it creates a cause of action only in favor of those identified in the statute. Thus, she contends that the wrongful death statute should be narrowly construed such that the unborn are not considered living and are therefore ineligible for distribution under § 11-7-13.

¶11. In support of her argument, Davis cites *Boroughs v. Oliver*, 217 Miss. 280, 64 So. 2d 338 (1953), in which the parents of an adopted child sought the authority to bring a wrongful death suit for the death of their adopted child. The Court there stated that the wrongful death statute was in derogation of the common law and this required the statute to be strictly construed. Resorting to the "standard dictionaries in general use among the people," the Court held that adoptive parents are not among the types of parents that may bring suit under the wrongful death statute.[1] *Id.,* 217 Miss. at 287, 64 So. 2d at 341 (quoting *State v. Lee,* 196 Miss. 311, 314, 17 So. 2d 277, 277 (1944)).

¶12. We find such a "plain language" approach unhelpful in resolving the current issue of whether "living" includes a viable preborn fetus. The appellants advance a more persuasive approach,

contending that the wrongful death statute should be given a reading "most coherent in principle, given the entire statutory scheme and the other valid rules in the field." *Gentry,* 606 So. 2d at 1122-23 (citing *McIntire v. Moore,* 512 So. 2d 687, 689 (Miss. 1987)). *Rainey* has already determined that an unborn child who has reached the prenatal stage of viability is a "person" and should not be denied the protection of the wrongful death statute. To rule that the same child is not "living" would lead to an absurd result under the law. A preborn child who dies after reaching the stage of viability would be a "person" whose beneficiaries could sue under the wrongful death statute; but where a relative of the same child dies, and the child survives and is later born, that child could not be considered "living" for a cause of action accruing at the same time under the same statute.

¶13. We thus uphold the framework of Mississippi's wrongful death scheme by extending the *Rainey* test to questions of beneficiary status under the statute. We hold that a preborn child who is viable at the time of a relative's death and is ultimately born alive, is "living" such that he or she can be a wrongful death beneficiary under the law. We are confident that such a rule accords with the traditional protections that have been afforded the unborn under our common and statutory law. *See, e.g., Harper v. Archer,* 4 S. & M. 99, 12 Miss. 99 (1845) (an infant is in *esse* from the time of conception for purpose of taking any estate which is for his benefit, provided the infant is born alive and after such a period of fetal existence that its continuance in life might be reasonably expected); *Clark v. Clark,* 126 Miss. 455, 89 So. 4 (1921) (child born after the making of a will and not mentioned in the will is vested with absolute title to a share of the estate); Miss. Code Ann. § 71-3-3 (1995) (posthumous child may recover under the state workers' compensation laws); Miss. Code Ann. § 93-13-7 (1994) (testamentary guardian may be appointed for an unborn child); Miss. Code Ann. § 97-3-37 (1994) (wilful killing of an unborn quick child is manslaughter).

¶14. The appellee warns that complicated medical issues will result from our holding that beneficiary status is determined pursuant to the *Rainey* viability test. To be sure, a determination that "living" commences at birth has the advantage of being a definite, precise, and observable occurrence, while viability is less certain and dependent upon medical technology.[2] Certainty, however, should not be given such overriding concern as to dictate the Court's conclusion in this regard.

¶15. In the present case, there is no challenge to the assertion that both Tarrance and Rico are the children of Mary L. Davis, mother, and Terry Spade, father, and that Tarrance and Rico are brothers. Moreover, there is little doubt that Rico was viable at the time his brother Tarrance died. Dr. Glenn Wegener, who is certified by the American Board of Obstetricians and Gynecologists, stated in his affidavit that Rico was approximately six and one-half months gestation on January 15, 1988, the day that Tarrance died. Based upon his professional training and experience, Dr. Wegener estimated that the probabilities of Rico's survival at that point would have been "better than ninety-five percent." Davis offered no medical evidence to refute Dr. Wegener's affidavit.

¶16. The record evidence overwhelmingly suggests that Rico Davis reached the prenatal age of viability when destruction of his mother's life did not necessarily mean the end of his life. *Rainey v. Horn*, 221 Miss. 267, 72 So. 2d 434; *Terrell v. Rankin*, 511 So. 2d 126 (Miss. 1987). Thus, Rico Davis was "living" at the time of Tarrance's death and is entitled to consideration for distribution of the settlement award as compensation for the negligence which led to the death of his brother, Tarrance Davis.

## III.

¶17. Justice Mills expresses the view that recovery for prenatal injury, to the extent that it rests upon the rationale that an unborn viable child is capable of independent existence, is based upon an artificial distinction. There is much merit in this view. The distinction between previable and viable fetuses, however, is embedded in this Court's prior interpretations of the wrongful death statute. We are ever mindful of the abiding principle that "[j]udges ought never to give their opinion on a law till it comes before them." *Lanier v. State,* 635 So. 2d 813, 820 (Miss. 1994) (Hawkins, C.J., concurring). The facts of this case clearly present a situation in which the preborn child, Rico, was viable at the time of his brother's death. We therefore decline to decide the issue of whether the law would allow recovery for an unborn previable child. We leave that determination for another day and an appropriate set of circumstances properly raising the question.

## IV.

¶18. For the foregoing reasons, the decision of the chancery court is reversed and remanded for further proceedings consistent with this opinion.

¶19. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., CONCUR. McRAE, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION. MILLS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS AND SMITH, JJ. WALLER, J., NOT PARTICIPATING.**

### McRAE, JUSTICE, SPECIALLY CONCURRING:

¶20. I concur with the majority that a viable fetus at six and one-half months gestation is a "living" person within the meaning of the wrongful death statute and so qualifies as a wrongful death beneficiary in an action brought pursuant to Miss. Code Ann. § 11-7-13. However, the majority fails to overrule *Stonecipher v. Kornhaus*, 623 So. 2d 955 (Miss. 1993), where an unborn child at eight and one-half months gestation was found not to have a claim separate from that of her parents for bringing suit for injuries sustained several hours before her emergency Caesarean delivery.

¶21. If a fetus at six and one-half months gestation is a viable person for purposes of the wrongful death statute and may recover for the loss of a brother he never knew, then surely a child should have a separate claim for injuries sustained at eight and one-half months gestation, separate and distinct from any cause of action her parents might pursue and irrespective of whether she was party to a contract entered into by her parents upon which liability is premised.

### MILLS, JUSTICE, SPECIALLY CONCURRING:

¶22. I agree that a preborn child who is viable at the time of a relative's death, and is ultimately born alive, is "living" such that he or she can be a wrongful death beneficiary. However, the majority's focus on the viability of a preborn child is troubling. Distinctions based upon the viability of a fetus

have been subject to sharp criticism by an "overwhelming majority of commentators...." ***Gentry v. Gilmore***, 613 So.2d 1241, 1248 (Ala.1993)(*Maddox J. dissenting*).[(3)]

¶23. The majority today extends ***Rainey v. Horn***, 221 Miss. 269; 72 So.2d 434 (Miss.1954) to include the beneficiary status of the unborn. Today's standards of justice dictate a more liberal recognition of beneficiary status as opposed to the actionability analysis created in ***Rainey.*** We stated in ***Rainey***,

> [T]he reasons usually advanced by those courts that allow recovery for prenatal injury are (1) an unborn viable child is capable of independent existence, hence should be regarded as a separate entity; (2) if the law recognizes an unborn child sufficiently to protect its property rights and rights of inheritance and protects it against the crimes of others, it should recognize its separate existence for the redressing of torts; (3) if no right of action is allowed, there is a wrong inflicted for which there is no remedy and (4) natural justice.

***Rainey***, 221 Miss. at 281; 72 So.2d at 438.

¶24. The first reason is simply based upon an artificial distinction. The ability to exist independent of external support systems is an irrelevant consideration for the issue of whether an entity is "living." Consider a person who is entirely dependent upon life support systems to survive. This person may be incapable of "independent existence." However, he or she is surely a separate "living" entity. Such is the case with a nonviable unborn child. Although such a child is not yet capable of independent existence, he or she is surely "living."

¶25. The majority skirts the obvious problem under the ***Rainey*** rule. No objective analysis can determine the exact second, minute, hour or day that a particular child may become viable. Our rules should apply equally in all cases and we should defer to, rather than ignore, certainty whenever possible.

¶26. The policy behind the second reason for the ***Rainey*** rule is just as strong for the nonviable unborn as it is for the viable unborn. The third and fourth reasons listed for the ***Rainey*** rule are even further advanced by extending the test to cover nonviable unborn children. Tortfeasors should be accountable for the injuries that they inflict. When viability is the applicable standard by which one measures if a preborn child is entitled to wrongful death benefits, this policy is not well served. The future harm suffered by the nonviable unborn child is left unredressed.

> ...[J]ustice is denied when a tortfeasor is permitted to walk away with impunity because of the happenstance that the unborn child had not yet reached viability at the time of death. The societal and parental loss is egregious regardless the state of fetal development. Our concern reflects the fundamental value determination of our society that life -- old, young, and prospective -- should not be wrongfully taken away. In the absence of legislative direction, the overriding importance of the interest that we have identified merits judicial recognition and protection by imposing the most liberal means of recovery that our law permits.

***Farley v. Sartin***, 466 S.E.2d 522, 533 (W.Va.1995).

¶27. Finally, the majority cites a number of cases and statutes to illustrate "the traditional protections

that have been afforded to the unborn under our common and statutory law." These authorities protect all the unborn, not just the viable unborn. Accordingly, it is more consistent with these authorities to confer beneficiary status on both viable and nonviable unborn children.

¶28. The legislative enactment of our wrongful death statute clearly confers beneficiary status upon all of the "living." Though many in our society differ as to when life may exist independently, there is no doubt that a fetus in utero is alive. Therefore, a preborn child should be entitled to wrongful death benefits as long as he or she was in utero at the time the tortious act was committed. Whether the child has reached the stage of prenatal viability is of no concern. Accordingly, I would extend the majority's holding to include nonviable unborn children as "living."

**ROBERTS AND SMITH, JJ., JOIN THIS OPINION.**

1. The proposition in **Boroughs** that adopting parents may not bring a wrongful death action for their deceased adopted child has been statutorily superseded by the current language of Miss. Code Ann. § 11-7-13.

2. *See* Harry Poulos, Comment, *Is There Consortium Before Birth? Expanding the Availability of Loss of Society Damages in the Wrongful Death Actions,* 24 Loy. U. L.J. 559, 583 n.4 (1993).

3. Justice Maddox's research in **Gentry** revealed that, "A child is an entity, a "person," from the moment of conception, 1 Stuart M. Speiser, et. al., Recovery for Wrongful Death and Injury § 4.37, at 204 (3rd ed. 1992); the first trimester is the developmental period in which the fetus is most susceptible to environmental influences, David A. Gordon, The Unborn Plaintiff, 63 Mich.L.Rev. 579, 589 (1965); viability is not determinative or relevant to the question of the tortfeasor's ability to escape liability, David Kader, The Law of Tortious Prenatal Death Since Roe v. Wade, 45 Mo.L.Rev. 639, 659-60 (1980); ..."potential life is no less potential during the first weeks of pregnancy than in the last weeks, and a fetus is entitled to develop without outside influence," Michael P. McCready, Comment, Recovery for the Wrongful Death of a Fetus, 25 U.Rich.L.Rev. 391, 405 (1991); viability distinctions impede the goals of the wrongful death statutes, Gary A. Meadows, Comment, Wrongful Death and the Lost Society of the Unborn, 13 J.Legal Med. 99, 114 (1992); viability should not be the point at which the unborn gain legal protection, because "viability is dependent upon a number of factors, including the weight and race of a fetus, maternal age and health, nutritional deficiencies and psychological elements," Patricia A. Meyers, Comment, Wrongful Death and the Unborn Child: A Look at the Viability Standard, 29 S.D.L.Rev. 86, 96-97 (1983); "the actual medical determination of the point at which a fetus attains viability is uncertain," Karen Rene Osborne, Comment, Torts-- The Right of Recovery for the Tortious Death of the Unborn, 27 How.L.J. 1649, 1661 (1984);..."viability is as arbitrary a standard in wrongful death cases as was birth," Sheryl Anne Symonds, Comment, Wrongful Death of the Fetus: Viability Is Not a Viable Distinction, 8 U.Pug. Sound L.Rev. 103, 115 (1984); and viability is "[w]ithout a compelling evidential or medical justification" and is "an artificial barrier to wrongful death recovery," Richard E. Wood, Comment, Wrongful Death and the Stillborn Fetus: A Common Law Solution to a Statutory Dilemma, 43 U.Pitt.L.Rev. 809, 835 (1982). **Gentry**, 613 So.2d at 1248-49.