IRVING, J.,
for the Court.
¶ 1. Erika Jones, in her capacity as ad-ministratrix of the estate of her deceased daughter, Jakayla McCoy, filed a petition for the determination of Jakayla’s heirs at law wherein she sought to disinherit Ja-kayla’s biological father, Irvin Lael McCoy, because he did not provide any financial support to Jakayla during her lifetime.[1] Following a hearing on the matter, the chancellor ruled that McCoy had not refused or neglected to support Jakay-la and that he was thus entitled to inherit from Jakayla’s estate. Aggrieved, Jones appeals and argues that the trial court erred in finding that McCoy is entitled to inherit from Jakayla’s estate because he failed to prove that he did not refuse or neglect to support Jakayla.
¶ 2. Finding error, we reverse and render.
FACTS
¶ 3. Jones and McCoy began dating in the summer of 2003. Shortly thereafter, Jones informed McCoy that she was pregnant, and the couple moved in together.[2] McCoy was unemployed during the time he lived with Jones, so Jones supported them financially. Jones and McCoy lived together until he went to prison in March 2004 to serve a nine-year sentence for selling cocaine. Jakayla was born the following month on April 1, 2004. McCoy was incarcerated when Jakayla was born, and he remained incarcerated during Ja-kayla’s short life. McCoy did not provide any financial support to Jakayla.
¶ 4. On April 16, 2006, Jakayla drowned in a neighbor’s swimming pool. McCoy was notified of Jakayla’s death and was allowed to attend her wake. Thereafter, Jones filed a wrongful death lawsuit *931 against the owners of the home where Jakayla had drowned. The neighbors had a one-hundred-thousand-dollar insurance policy and Jones’s attorney negotiated a settlement for the full proceeds from the policy to be paid to Jakayla’s wrongful death beneficiaries.
¶ 5. In May 2007, a hearing was held to determine Jakayla’s wrongful death beneficiaries. Jones testified that she had taken Jakayla to visit McCoy while he was incarcerated and that she and McCoy kept in contact through letters. Jones also stated that she sent him pictures of Jakay-la and that she kept McCoy abreast of Jakayla’s progress.
¶ 6. McCoy testified that because of his incarceration, he provided no financial assistance to Jakayla prior to her death. However, he stated that he had purchased household items and food during the time he lived with Jones prior to Jakayla’s birth.
¶ 7. McCoy testified that he has an inmate account in which his parents and brother make regular deposits.[3] However, he claimed to be unaware of a policy that allows inmates to send money to people outside of the prison. McCoy did not contribute to Jakayla’s hospital, funeral, or burial expenses.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 8. “[Wjhether a father has openly treated an illegitimate child as his own ‘may only be treated as a finding of fact....’” In re Estate of Patterson v. Patterson, 798 So.2d 347, 349(¶ 8) (Miss.2001) (quoting Bullock v. Thomas, 659 So.2d 574, 576 (Miss.1995)). “This finding will only be reversed if manifestly erroneous or unsupported by substantial evidence in the record.” Id.
¶ 9. In her only assignment of error, Jones contends that it was error for the court to determine that McCoy could inherit from Jakayla’s estate. Jones argues that McCoy failed to prove that he did not refuse or neglect to support Jakay-la as required by Mississippi Code Annotated section 91—1—15(3)(a—d) (Supp.2007), which provides in pertinent part that:
(3) An illegitimate shall inherit from and through the illegitimate’s natural father and his kindred, and the natural father of an illegitimate and his kindred shall inherit from and through the illegitimate according to the statutes of descent and distribution if:
(a) The natural parents participated in a marriage ceremony before the birth of the child, even though the marriage was subsequently declared null and void or dissolved by a court; or
(b) There has been an adjudication of paternity or legitimacy before the death of the intestate; or
(c) There has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under Sections 91-1-27 and 91-1-29. However, no such claim of inheritance shall be recognized unless the action seeking an adjudication of paternity is filed within one (1) year after the death of the intestate or within ninety (90) days after the first publication of notice to creditors to present their *932 claims, whichever is less; and such time period shall run notwithstanding the minority of a child....
(d) The natural father of an illegitimate and his kindred shall not inherit:
(i) From or through the child unless the father has openly treated the child as his, and has not refused or neglected to support the child.
Pursuant to section 91-1-15(3), it is clear that in order for McCoy to receive the benefit of inheritance from Jakayla he must prove (1) that he and Jones participated in a marriage ceremony prior to Jakayla’s birth, or (2) that there had been an adjudication of legitimacy, or an adjudication of paternity prior to or after Jakay-la’s death, and (3) that he openly acknowledged Jakayla during her lifetime and did not refuse or neglect to support her. The first prong of this test is not at issue, as Jones does not dispute that McCoy is Ja-kayla’s father.[4] However, Jones argues that McCoy failed to prove that he did not refuse or neglect to support Jakayla.
¶ 10. Jones contends that McCoy did not provide any financial support to Jakay-la from the time she informed him that she was pregnant to the time that Jakayla died. Further, Jones argues that McCoy’s incarceration did not alleviate his responsibility to financially support Jakayla. She also argues that McCoy could have sent money to support Jakayla from his inmate account.
¶ 11. McCoy argues that although his incarceration prevented him from providing any financial support to Jakayla, he provided non-financial support to her before and after her birth in other ways by: (1) “providing companionship to [Jones] throughout the majority of her pregnancy with Jakayla, and by babysitting Jaquí-an,” [5] (2) by allowing Jones and Jakayla to visit him in prison, (3) by requesting that his parents take care of Jakayla, and (4) by asking his mother to purchase an outfit for Jakayla to be pictured in.
¶ 12. The chancellor determined that:
The word “prisoner” is not without strong connotation. Given this, the question before the Court is, not that he didn’t support, but that he “refused or neglected” to support which is a much different standard. Bullock v. Thomas, 659 So.2d 574 (Miss.1995). If the claimant had been a free man and failed to support the child under the statute thereby evidencing a refusal or neglect, the decision of this Court might be different. It would be inequitable and contrary to the statute based on these circumstances to determine that the claimant’s rights as an heir should be denied when he was effectively unable to meet the requirements of this statute.
The Court therefore finds and orders that [McCoy] has met his burden and that he is in fact a known heir, along with [Jones] and Jaqualan [sic] Jones, who is entitled to inherit from the estate of his minor child.
We recognize that “refusing or neglecting to support a child is qualitatively different from mere failure to support.” In re Estate of Ford, 552 So.2d 1065, 1068 (Miss.1989). However, we disagree with the chancellor’s finding and conclude that McCoy in fact refused and/or neglected to support Jakayla. Even though he was *933 incarcerated during her lifetime, McCoy could have provided some support, albeit meager. McCoy received monetary donations from his family members, and although he claimed to be unaware of a policy that would have allowed him to send Jones money for Jakayla’s benefit, the record does not reflect that he made any attempt to support Jakayla even before he began serving his sentence. We And it highly unlikely that the Legislature contemplated the “non-financial support” listed above as “supporting the child.”
¶ 13. McCoy moved in with Jones shortly after learning of her pregnancy and did not provide any financial support to Jones before or after he went to prison. Jones supported Jakayla with no assistance from McCoy, and this Court concludes that allowing McCoy to receive any portion of the settlement from the wrongful death action would result in a financial windfall in McCoy’s favor. For this reason, we reverse and render the chancellor’s finding that McCoy proved that he did not refuse or neglect to support Jakay-la.
¶ 14. THE JUDGMENT OF THE LOWNDES COUNTY CHANCERY COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY.

. The record refers to McCoy by his middle name, Lael.

. Jones does not dispute that McCoy is Jakay-la's biological father.

. Milton Martin, chief investigator for the Corrections Investigation Division of the South Mississippi Correctional Institution testified in a deposition prior to the hearing that every inmate is assigned an inmate handbook wherein the procedure for sending money outside of the facility is detailed. Investigator Martin stated that inmates may send up to one hundred dollars per month outside of the facility without in-depth approval.

. Although Jones acknowledges that McCoy is Jakayla’s father, we find nothing in the record indicating that a judicial adjudication of legitimacy or paternity has been made, as required by the statute.

. Jaqulan Jones is Jones's son from a previous relationship.