# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01789-COA

**IN THE MATTER OF THE ESTATE OF**        **APPELLANTS**
**DELVYN NELSON, DECEASED: ROBERT**
**PERKINS, NATURAL FATHER OF DELVYN**
**NELSON, DECEASED; L.P., A MINOR, BY AND**
**THROUGH HER NEXT FRIEND AND**
**NATURAL MOTHER, JUANITA CROOM; K.P.,**
**A MINOR, BY AND THROUGH HER NEXT**
**FRIEND AND NATURAL MOTHER, ATLAY**
**NELSON; AND A.G., A MINOR, BY AND**
**THROUGH HIS NEXT FRIEND AND NATURAL**
**MOTHER, NYKESHIA GREEN**

**v.**

**ROSHIDA NELSON**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/16/2016 |
| TRIAL JUDGE: | HON. PATRICIA D. WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANTS: | GINNY Y. KENNEDY CECIL MAISON HEIDELBERG |
| ATTORNEYS FOR APPELLEE: | CARLOS EUGENE MOORE ASHLEIGH LAUREN QUINN |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 07/26/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLTON, J., FOR THE COURT:**

¶1.     The Hinds County Chancery Court entered an order naming Roshida Nelson and her

minor daughter Tina[1] as the sole heirs at law and wrongful death beneficiaries of Delvyn Nelson. The appellants now appeal, arguing the following assignments of error: (1) the chancellor erred in determining that Robert Perkins and his natural children were not wrongful death beneficiaries, (2) the chancellor erred by adjudicating Tina as a wrongful death beneficiary, (3) the wrongful death statute is unconstitutional, and (4) the chancellor erred by failing to apply the doctrine of unclean hands sua sponte.

¶2. Upon our review, we find that the chancellor erred in part in her determination of the wrongful death beneficiaries. Accordingly, we affirm in part, and reverse and render in part.

**FACTS**

¶3. Delvyn Nelson was born to Roshida Nelson on January 26, 2012. Delvyn was transferred to the neonatal intensive care unit at the University of Mississippi Medical Center (UMMC) in Jackson and died on June 2, 2012, while a patient at UMMC. The death certificate, dated July 3, 2012, stated that Delvyn's cause of death was "sepsis, fungal" due to or as a consequence of "multiple organ system failure, cardiopulmonary disease, and congenital heart disease."

¶4. After Delvyn was born, Roshida filed an action to determine paternity against Robert Perkins in the District Court of Sumter County, Alabama. Roshida and Perkins were never married, and Perkins was not listed on Delvyn's birth certificate. After Roshida filed the paternity action, Perkins denied that he was Delvyn's natural father and requested genetic testing. Perkins further denied paternity when Roshida sought financial support from Perkins

---

[1] We use a fictitious name to protect the privacy of the minor child.

2

through the Social Security Administration.

¶5.    Although Delvyn tragically died before the parties received the test results, the results revealed that Perkins was Delvyn's father.   The results were filed with the Alabama court on June 18, 2012.  On that same day, Roshida filed a motion to dismiss her action regarding paternity due to Delvyn's death, and the motion was granted without objection from Perkins. The Alabama court dismissed the action without an admission or adjudication of paternity.

¶6.    In December 2013, Roshida, individually and on behalf of Delvyn's wrongful death beneficiaries, filed a medical malpractice suit against UMMC.  The record reflects that Roshida did not name Perkins as a plaintiff and she did not notify him of the commencement of the action.  The malpractice suit was settled, and the settlement proceeds were deposited in the registry of the circuit court pending the determination of Delvyn's wrong death beneficiaries.

¶7.    On February 26, 2014, Roshida filed a petition to adjudicate Delvyn's heirs at law and wrongful death beneficiaries in the Hinds County Chancery Court, and she published notice of the petition in *The Clarion Ledger* on April 14, 21, and 28, 2014.  Perkins acknowledged notice of the petition.

¶8.    On February 10, 2015, nearly a year after Roshida filed her petition to adjudicate Delvyn's heirs and wrongful death beneficiaries, Perkins filed a motion asking the Alabama district court to amend its order dismissing the action regarding paternity and declare him Delvyn's father.  The Alabama court granted Perkins's motion.

¶9.    Roshida subsequently filed a motion to set aside the adjudication of paternity, which

3

the Alabama court granted on August 12, 2015. In setting aside the adjudication of paternity, the Alabama court ultimately held that Perkins was not the legal father of Delvyn. The Alabama court explained that after the original action regarding paternity was dismissed in 2012, no subsequent hearing appeared on the docket, "nor was evidence of [Perkins's] admission of paternity presented to the [c]ourt, and [Perkins] did not admit paternity of [Delvyn] by statement in open [c]ourt nor by filing any document acknowledging paternity of [Delvyn]." Perkins appealed to the Alabama Court of Appeals, which affirmed the district court's findings.

¶10.    Perkins then filed an answer to Roshida's February 26, 2014 petition to adjudicate Delvyn's heirs and wrongful death beneficiaries. In his answer, Perkins alleged that as Delvyn's natural father, he and his other minor children, Lisa, Kim, and Alan, qualified as wrongful death beneficiaries.[2]

¶11.    The chancellor in the instant case entered an order on December 16, 2016, finding that Roshida and Tina were Delvyn's sole heirs at law and wrongful death beneficiaries. The chancellor held that neither Perkins nor his other minor children met the statutory requirements to be determined Delvyn's wrongful death beneficiaries and therefore they could not recover wrongful death benefits. It is from this order that Perkins, Lisa, Kim, and Alan appeal.

### DISCUSSION

---

[2] We use fictitious names to protect the privacy of the minor children. Lisa is represented in this action by her natural mother, Juanita Croom. Kim is represented in this action by her natural mother Atlay Nelson. Alan is represented in this action by his natural mother Nykeshia Green.

## I.    Determination of Wrongful Death Beneficiaries

¶12.    In this appeal, Perkins, Lisa, Kim, and Alan argue that the chancellor's determination of wrongful death beneficiaries was clearly erroneous. "We apply a limited standard of review to appeals from chancery court." *In re Estate of Ivy*, 121 So. 3d 226, 232 (¶29) (Miss. Ct. App. 2012).  Upon review, "[w]e will not disturb the factual findings of a chancellor unless such findings are manifestly wrong or clearly erroneous." *Id.*  (internal quotation mark omitted).  We apply a de novo standard of review to questions of law. *Id.*

¶13.    Mississippi's wrongful death statute, Mississippi Code Annotated section 11-7-13 (Rev. 2004), provides:

> Whenever the death of any person . . . shall be caused by any real, wrongful or negligent act or omission . . . as would, if death had not ensued, have entitled the party injured or damaged thereby to maintain an action and recover damages in respect thereof . . . and such deceased person shall have left a . . . father or mother, or sister, or brother, the person or corporation, or both that would have been liable if death had not ensued . . . shall be liable for damages, notwithstanding the death, and the fact that death was instantaneous shall in no case affect the right of recovery. The action for such damages may be brought in the name of the personal representative of the deceased person . . . for the benefit of all persons entitled under the law to recover, . . . or by the parent for the death of a child . . . or by a sister for the death of a brother . . . or a brother for the death of a brother, or all parties interested may join in the suit, and there shall be but one (1) suit for the same death which shall ensue for the benefit of all parties concerned, but the determination of such suit shall not bar another action unless it be decided on its merits. Except as otherwise provided in Section 11-1-69, in such action the party or parties suing shall recover such damages allowable by law as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit.
>
> . . . .
>
> In an action brought pursuant to the provisions of this section by the . . . father, mother, sister or brother of the deceased . . . such party or parties may recover

5

as damages property damages and funeral, medical or other related expenses incurred by or for the deceased as a result of such wrongful or negligent act or omission . . . , whether an estate has been opened or not. Any amount, but only such an amount, as may be recovered for property damage, funeral, medical or other related expenses shall be subject only to the payment of the debts or liabilities of the deceased for property damages, funeral, medical or other related expenses. All other damages recovered under the provisions of this section shall not be subject to the payment of the debts or liabilities of the deceased, except as hereinafter provided, and such damages shall be distributed as follows: . . .

> if the deceased has no husband, nor wife, nor children, the damages shall be distributed equally to the father, mother, brothers and sisters, or such of them as the deceased may have living at his or her death. . . . There shall not be, in any case, a distinction between the kindred of the whole and half blood of equal degree. The provisions of this section shall apply . . . to the mother on account of the death of an illegitimate child . . . , and they shall have all the benefits, rights and remedies conferred by this section on legitimates. The provisions of this section shall apply . . . to the natural father on account of the death of the illegitimate child . . . , and they shall have all the benefits, rights and remedies conferred by this section on legitimates, if the survivor has or establishes the right to inherit from the deceased under Section 91-1-15.

¶14. We now turn to review each wrongful-death beneficiary's claim.[3]

---

[3] In *Long v. McKinney*, 897 So. 2d 160, 175-76 (¶67) (Miss. 2004), the supreme court ruled:

Section 11-7-13 provides that wrongful death litigation may be brought by the personal representative of the deceased or by any one or more of several statutory beneficiaries, for the benefit of all entitled to recover. Unless all persons entitled to recover join in the suit, those who do have a fiduciary obligation to those do not. Miss. Code Ann. § 91-1-27 (Rev. 2004) provides for a chancery determination of the heirs at law of a decedent; that is, those who inherit in the absence of a will. Although our statutes mandate no specific procedure for the identification of wrongful death beneficiaries, a chancery court may make such determinations. Those bringing the action, together with their counsel, have a duty to identify the beneficiaries, and they should do so early in the proceedings.

6

### A.    Roshida (Delvyn's Mother)

¶15.    In her order determining Delvyn's heirs at law and wrongful death beneficiaries, the chancellor interpreted section 11-7-13 and ruled that Roshida and her daughter, Tina, were the sole wrongful death beneficiaries and heirs at law of Delvyn.

¶16.    The record reflects that Roshida was not married to Delvyn's natural father at the time of his birth. Accordingly, Delvyn would be considered an illegitimate child. Section 11-7-13 provides that, as to the mother of an illegitimate child, "[t]he provisions of this section shall apply . . . to the mother on account of the death of an illegitimate child . . . and they shall have all the benefits, rights and remedies conferred by this section on legitimates." We therefore find that the chancellor properly determined Roshida to be a wrongful-death beneficiary of Delvyn.

### B.    Tina (Delvyn's Half Sister)

¶17.    The Appellants challenge the chancellor's finding that Tina was a wrongful death beneficiary of Delvyn. The record reflects that the Appellants never raised this argument before the chancellor, nor did they object to Tina's status as a beneficiary. However, the record further reflects that Roshida did not raise the issue of waiver on appeal.

¶18.    Section 11-7-13 provides that the wrongful death beneficiaries are the brothers and sisters "as the deceased may have living at his or her death." Section 11-7-13 specifically provides that "[t]here shall not be, in any case, a distinction between the kindred of the whole and half blood of equal degree." Delvyn was born on January 26, 2012, and he died on June

---

Accordingly, we find that the determination of wrongful-death beneficiaries was properly before the chancellor.

7

2, 2012. At trial, Roshida testified that at the time of Delvyn's death, she did not have any other living children, nor was she pregnant.

¶19.    On appeal, Roshida refutes the Appellants' argument that her daughter Tina is not entitled to wrongful death benefits. Roshida acknowledges that the record does not reflect when Tina was conceived, but she maintains that "on about June 19, 2014, [Tina] was approximately one year old." The record shows that Delvyn died two years prior on June 2, 2012. At trial, Roshida did not claim that she was pregnant at the time of Delvyn's death. On appeal, Roshida's counsel argues that "[t]he possibility still exists that [Tina] was conceived before [Delvyn's] death and [Roshida] was ignorant of such fact due to the tumultuous circumstances surrounding the death of her infant child, Delvyn[.]" Roshida cites to *Fizer v. Davis (Estate of Davis)*, 706 So. 2d 244, 247 (¶13) (Miss. 1998), where the supreme court held that "a preborn child who is viable at the time of a relative's death and is ultimately born alive, is 'living' such that he or she can be a wrongful death beneficiary under the law." Roshida argues that Tina "was possibly in existence" at the time of Delvyn's death, and, since Tina is living, she is entitled to wrongful death benefits. Contrary to Roshida's counsel's claims now on appeal, Roshida did not testify at trial that she was confused or ignorant regarding Tina's conception. Roshida testified that she was not pregnant at the time of Delvyn's death. The record also shows that on June 19, 2014, more than two years after Delvyn's death, Tina was approximately one year old. Accordingly, calculations show that Tina was not conceived or possibly in existence at the time of Delvyn's death on June 2, 2012.

8

¶20. In *In re Estate of Davis*, 706 So. 2d at 247 (¶13), the supreme court reviewed a chancery court's determination of whether an unborn fetus who was at six and one-half months gestation at the time of his brother's death could recover as a wrongful death beneficiary within the meaning of section 11-7-13. The supreme court reversed the chancellor's determination and held that the facts of that case "clearly present a situation in which the preborn child . . . was viable at the time of his brother's death" and therefore it "is among that class of persons defined as 'living' for purposes of the wrongful death statute such that he is a beneficiary under the statute." *Id*. at 245, 248 (¶¶1, 17). The appellants submitted an affidavit from a doctor certified in the field of obstetrics and gynecology wherein the doctor stated that Rico Davis, the preborn child at issue, "was approximately six and one-half months gestation" on the day his brother died and estimated "that the probabilities of Rico's survival at that point would have been better than ninety-five percent." *Id*. at (¶15) (internal quotation mark omitted). The supreme court found that the appellee failed to offer any medical evidence to refute the affidavit. *Id*. As a result, the supreme court determined that "[t]he record evidence overwhelmingly suggests that Rico Davis reached the prenatal age of viability when destruction of his mother's life did not necessarily mean the end of his life[]" and was therefore "living" at the time of his brother's death. *Id*. at 248 (¶16) (citing *Rainey v. Horn*, 221 Miss. 269, 72 So. 2d 434 (Miss. 1954); *Terrell v. Rankin*, 511 So. 2d 126 (Miss.1987)). However, the *Davis* court declined to address "whether the law would allow recovery for an unborn previable child." *Id*. at (¶17).

¶21. We find that the record before us contains no evidence to show that Tina was

9

conceived and viable, and therefore "living," at the time of Delvyn's death. Thus, under the statute, Tina is not a wrongful death beneficiary. Accordingly, we reverse and render regarding the chancellor's finding that Tina was a wrongful death beneficiary and heir-at-law of Delvyn.

### C. *Perkins (Delvyn's Natural Father)*

¶22. The chancellor ruled that Perkins failed to meet the statutory requirements to be determined a wrongful death beneficiary or an heir-at-law under section 11-7-13 and Mississippi Code Annotated section 91-1-15(3)(a)-(c) (Rev. 2013). As a result, Perkins was not entitled to share in the proceeds from the wrongful death action.

¶23. The record indicates that genetic testing confirmed that Perkins was Delvyn's natural father. In order to recover wrongful death benefits, section 11-7-13 requires the father of an illegitimate child to establish his right to inherit from the deceased pursuant to Mississippi Code Annotated section 91-1-15, which provides:

> An illegitimate shall inherit from and through the illegitimate's natural father and his kindred, and the natural father of an illegitimate and his kindred shall inherit from and through the illegitimate according to the statutes of descent and distribution if:
>
> (a)    The natural parents participated in a marriage ceremony before the birth of the child . . . ; or
>
> (b)    There has been an adjudication of paternity or legitimacy before the death of the intestate; or
>
> (c)    There has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under Sections 91-1-27 and 91-1-29. However, no such claim of inheritance shall be recognized unless the action seeking an adjudication of paternity is filed within one (1) year after the death of

10

the intestate or within ninety (90) days after the first publication of notice to creditors to present their claims, whichever is less; and such time period shall run notwithstanding the minority of a child. This one year limitation shall be self-executing and may not be tolled for any reason, including lack of notice . . . .

(d)     The natural father of an illegitimate and his kindred shall not inherit:

(i)     From or through the child unless the father has openly treated the child as his, and has not refused or neglected to support the child . . . .

¶24.    It was undisputed that Perkins and Roshida were never married.[4] The record contains no adjudication of paternity or legitimacy before Delvyn's death[5] or after his death,[6] because the Alabama court set aside its prior adjudication of paternity.

¶25.    In reviewing the requirements set forth in section 91-1-15(3)(d)(i), the record contains no evidence to show that Perkins "openly treated the child as his, and has not refused or neglected to support the child." Rather, the evidence shows that Perkins never actually met Delvyn or introduced Delvyn to his family. Perkins was not listed on Delvyn's birth certificate. Moreover, Perkins neglected to support Delvyn. He failed to provide food or clothing for Delvyn and did not help with the birth expenses. When Roshida attempted to obtain child support and social security benefits from Perkins, Perkins denied paternity and challenged her efforts. Perkins did not inquire about Delvyn's condition or offer to help with Delvyn's medical or funeral expenses. Instead, he allowed the paternity action against him

---

[4] *See* Miss. Code Ann. § 91-1-15(3)(a).

[5] *See* Miss. Code Ann. § 91-1-15(3)(b).

[6] *See* Miss. Code Ann. § 91-1-15(3)(c).

11

to be dismissed. We agree with the chancellor's determination that Perkins failed to establish the requirements of section 91-1-15. We therefore find no error in the chancellor's determination Perkins could not recover wrongful death benefits from Delvyn.

*D.      Lisa, Kim, and Alan (Delvyn's Half Siblings)*

¶26.     Regarding the status of Lisa, Kim, and Alan as wrongful death beneficiaries, the chancellor held that "Perkins's other children cannot recover wrongful death benefits through the deceased child, Delvyn, because [Perkins] does not meet the requirements of section 91-1-15 (3)(a)-(c)." In her order, the chancellor explained:

> The Mississippi Supreme Court has recognized the absolute necessity of meeting the requirements of section 91-1-15 in order for a father and his kindred to claim wrongful death benefits through a deceased illegitimate child. In *Estate of Patterson v. Patterson*, [798 So. 3d 347 (Miss. 2001),] the [supreme c]ourt held that, in an action to determine deceased illegitimate child's heirs at-law, [a] half-brother could not inherit because the father did not meet statutory requirements to inherit. In [*Jones v. McCoy (In re Estate of McCoy)*], 988 So. 2d 929 (Miss. Ct. App. 2008), the [Mississippi C]ourt [of Appeals] reversed the chancellor's finding that [the] biological father was [an] heir-at-law because [the] father failed to show [his] right to inherit under section 95-1-15(3). *See also Williams v. Farmer*, 876 So. 2d 300 (Miss. 2004).
>
> [Section] 91-l-15(3)(d)(i) provides "the natural father of an illegitimate and his kindred shall not inherit: (i) From or through the child unless the father has openly treated the child as his, and has not refused or neglected to support the child."

¶27.     As acknowledged by the chancellor, the Mississippi Supreme Court has established that the natural father of an illegitimate child, as well as the father's "kindred," can inherit under the wrongful death statute only if the father meets the requirements of section 91-1-15. *Patterson*, 798 So. 3d at 350 (¶17) ("The wrongful death statute provides for illegitimates to inherit, but that right is tied to [section] 91-1-15."). In *Patterson*, the supreme court held

12

that a natural father and his living son (the decedent's half-brother through his father) could not recover wrongful death benefits from the decedent since the natural father failed "to prove by clear and convincing evidence [that] not only was [he] was the biological father of [the decedent], but also that he was entitled to inherit from [the decedent] as [an] heir-at-law and as a wrongful death beneficiary." *Id*. at (¶16); *see also Bullock v. Thomas*, 659 So. 2d 574, 578 (Miss. 1995) (affirming the chancellor's judgment finding that a father failed to meet the requirements of section 91-1-15 and therefore the father and his children could not inherit from his illegitimate child).

¶28.   In applying guidance from the supreme court, we find that the chancellor did not err in determining that Perkins's children, Lisa, Kim, and Alan, cannot recover wrongful death benefits from Delvyn.

¶29.   With regard to the issue of wrongful death beneficiaries, we affirm the chancellor's judgment as to Roshida, Perkins, Lisa, Kim, and Alan, and we reverse and render the chancellor's judgment as to Tina. Thus, Delvyn's sole wrongful death beneficiary is Roshida, and she is entitled to the settlement proceeds deriving from the wrongful death of Delvyn.

## II.   Constitutionality of the Wrongful Death Statute

¶30.   The Appellants also argue that "[t]he [w]rongful [d]eath [s]tatute's incorporation of [s]ection 91-1-15(3) violates the . . . guarantee of equal protection under the laws." The Appellants cite to Justice McRae's separate opinion in *Patterson*, 798 So. 2d at 351-52, in support of their claim that section 91-1-15 "creates a hierarchy of rights" and "sets up a classification which is biased and/or discriminates against illegitimate fathers and their

13

children, who are siblings with the decedent."

¶31. The record reflects that on May 25, 2016, the Appellants filed a memorandum in the chancery court responding to Roshida's argument that Perkins, Lisa, Kim, and Alan failed to meet the statutory requirements to receive wrongful death benefits from Delvyn. In this memorandum, the Appellants challenged the constitutionality of section 11-7-13 as applied to the natural father of an illegitimate child and the children of the natural father. In her December 16, 2016 order determining the wrongful death beneficiaries, the chancellor did not address the Appellants' constitutional claim.

¶32. Mississippi Rule of Civil Procedure 24(d) "requires that proper notice be given to the Attorney General when the constitutionality of a statute is challenged to afford him an opportunity to intervene and argue the question of constitutionality." *Barnes v. Singing River Hosp. Sys.*, 733 So. 2d 199, 202 (¶9) (Miss. 1999) (internal quotation mark omitted). Mississippi Rule of Appellate Procedure 44(a) "similarly requires service of any appellate brief challenging the validity of a statute on the Attorney General, the city attorney, or other chief legal officer of the governmental body involved." *Id.* (internal quotation mark omitted). The Appellants provided the Attorney General with a copy of their appellate brief. It appears that the Appellants have therefore complied with the requirements of Mississippi Rule of Appellate Procedure 44(a).

¶33. However, the record reflects that the Appellants failed to provide the Attorney General with notice of their constitutional challenge at the trial level. The record shows that the Appellants first notified the Attorney General of their challenge to the constitutionality of the

statute in their notice of appeal. We thus find that the Appellants have not complied with the requirements of Mississippi Rule of Civil Procedure 24(d). This Court has held that "parties challenging the constitutionality of a statute must notify the Attorney General under Mississippi Rule of Civil Procedure 24(d)." *Brown v. Waldron*, 186 So. 3d 955, 961 (¶19) (Miss. Ct. App. 2016). The supreme court has procedurally barred challenges to the constitutionality of a statute where an appellant has failed to comply with the notice requirements of Mississippi Rule of Civil Procedure 24(d). *Powers v. Tiebauer*, 939 So. 2d 749, 754-55 (¶17) (Miss. 2005); *In re D.O.*, 798 So. 2d 417, 423 (¶22) (Miss. 2001); *Pickens v. Donaldson*, 748 So. 2d 684, 691 (¶31) (Miss. 1999); *see also 5K Farms, Inc. v. Miss. Dep't of Revenue*, 94 So. 3d 221, 224 (¶12) (Miss. 2012).

¶34. Since the Appellants failed to provide notice to the Attorney General pursuant to Mississippi Rule of Civil Procedure 24(d) regarding their challenge to the constitutionality of the wrongful death statute's incorporation of section 91-1-15(3), we find the issue procedurally barred, and we decline to address it.

### III. Doctrine of Unclean Hands

¶35. Finally, Perkins claims that Roshida failed to give him notice of the wrongful death action against UMMC. As a result, Perkins claims "Roshida has unclean hands and . . . should not now be allowed to benefit from her willful breach of her fiduciary duties."

¶36. "The doctrine of unclean hands provides that he who comes into equity must come with clean hands." *In re Estate of Richardson*, 903 So. 2d 51, 55 (¶15) (Miss. 2005) (internal quotation marks omitted) (citing *Thigpen v. Kennedy*, 238 So. 2d 744, 746 (Miss. 1970)).

15

The supreme court has "further expounded upon the meaning of unclean hands, stating: the meaning of this maxim is to declare that no person as a complaining party can have the aid of a court of equity when his conduct with respect to the transaction in question has been characterized by wilful inequity." *Id*. (internal quotation mark omitted). A chancellor possesses a duty to apply this doctrine sua sponte "when it is evident by the facts of the case that the unclean hands doctrine is applicable." *Estate of Van Ryan v. McMurtray*, 505 So. 2d 1015, 1019 (Miss. 1987).

¶37. In turning to the case before us, we recognize that "[a] wrongful death beneficiary may bring suit with or without the knowledge and agreement of the remaining beneficiaries or estate representative." *Willing v. Estate of Benz*, 958 So. 2d 1240, 1256 (¶44) (Miss. Ct. App. 2007) (citing *Long v. McKinney*, 897 So. 2d 160, 176 (¶68) (Miss. 2004)). However, the representative beneficiary must provide reasonable notice "(i) to all other wrongful death beneficiaries; (ii) to the personal representative of the decedent if one has been appointed; and (iii) to each person who bears a relationship to the deceased specified in section 11-7-13." *Long*, 897 So. 2d at 176 (¶68).

¶38. Roshida admits she did not give Perkins notice of the wrongful death action against UMMC. However, we do not find Roshida's failure to give notice amounts to a "willful act . . . which . . . transgress[ed] equitable standards of conduct." Roshida and Perkins were never married, Perkins consistently denied paternity, and Perkins failed to meet the statutory requirements to constitute a wrongful death beneficiary of Delvyn. *See* Miss. Code Ann. §§ 11-7-13, 91-1-15.

16

¶39.    We find the doctrine of unclean hands is inapplicable under the facts of this case.

Accordingly, the Appellants' claim is without merit.

¶40.    **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

      **BARNES, J., CONCURS. IRVING, P.J., FAIR, GREENLEE AND TINDELL, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LEE, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. WILSON, J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION, JOINED BY FAIR, J.; LEE, C.J., GREENLEE AND TINDELL, JJ., JOIN IN PART. WESTBROOKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. GRIFFIS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY WESTBROOKS AND TINDELL, JJ.**

      **WILSON, J., CONCURRING IN PART AND IN RESULT:**

¶41.    I reach the same result as the lead opinion but for somewhat different reasons. *First*, I concur with the lead opinion that, based on Mississippi Supreme Court precedent applying our wrongful death statute, Lisa, Kim, and Alan are not among Delvyn's wrongful death beneficiaries.[7]  I agree with Judge Griffis that they seem to qualify as beneficiaries under the plain language of the wrongful death statute, but we are bound by Mississippi Supreme Court precedent even if it is wrongly decided. *Second*, I disagree with the lead opinion's finding

---

[7] I also concur with the lead opinion that Perkins and Tina are not among Delvyn's wrongful death beneficiaries.  As to Tina, the only evidence in the record shows that she was not conceived until after Delvyn's death.  In a pleading filed on June 19, 2014—*i.e.*, more than two years after Delvyn died—Nelson stated that Tina was then "approximately 1 year old."  More important, Nelson specifically testified that she was *not* pregnant when Delvyn died.  There is no record evidence that conflicts with Nelson's sworn testimony.  Therefore, the only record evidence shows that Tina was not living at the time of Delvyn's death. *See In re Estate of Davis*, 706 So. 2d 244, 248-50 (¶¶22-28) (Miss. 1998) (Mills, J., specially concurring) (concluding that a nonviable unborn child is "living" for purposes of the wrongful death statute); *Childs v. Gen. Motors Corp.*, 73 F. Supp. 2d 669, 674-75 (N.D. Miss. 1999) (same).

that the appellants waived their constitutional challenge. *Third*, I would address the appellants' constitutional challenge on the merits and hold that the wrongful death statute is constitutional as applied to them. *Fourth*, although Nelson has not raised the issue, I cannot ignore that there is no credible evidence in the record that Lisa, Kim, and Alan are Delvyn's paternal half-siblings. This lack of evidence would require us to reverse and remand for further proceedings if the factual issue remained material to the outcome of the case. However, the issue is moot in light of our conclusion that Lisa, Kim, and Alan are not Delvyn's wrongful death beneficiaries even assuming that they are his half-siblings. I address these four issues in turn below.

## I.      The Wrongful Death Statute

¶42.    If we were writing on a clean slate, I would agree with Judge Griffis's interpretation of the wrongful death statute. The statute clearly states: "There shall not be, in any case, a distinction between the kindred of the whole and half blood of equal degree." Miss. Code Ann. § 11-7-13 (Rev. 2004). It also provides that when, as in this case, the deceased has no spouse or children, "damages shall be distributed equally to the father, mother, brothers and sisters." *Id.* Thus, absent some exclusion, Perkins, Lisa, Kim, and Alan all qualify as wrongful death beneficiaries of Delvyn.

¶43.    However, the statute goes on to state: "The provisions of this section shall apply to . . . the natural father on account of the death of [an] illegitimate child . . . , and [he] shall have all the benefits, rights and remedies conferred by this section . . . , if [he] has or establishes the right to inherit from the deceased under Section 91-1-15." *Id.* In this case,

18

Perkins clearly failed to establish his right to inherit under section 91-1-15 because there was no valid adjudication of paternity, he did not openly treat Delvyn as his own, and he failed to support Delvyn. *See* Miss. Code Ann. § 91-1-15(3) (Rev. 2013). Therefore, under the plain language of the wrongful death statute, Perkins is not entitled to "the benefits, rights, and remedies conferred by [the wrongful death statute]." Miss. Code Ann. § 11-7-13.

¶44. In addition, because Perkins failed to satisfy the requirements of section 91-1-15, "his kindred" (Lisa, Kim, and Alan) "shall not *inherit*" from Delvyn—i.e., they are not among Delvyn's *heirs at law*. Miss. Code Ann. § 91-1-15(3)(d) (emphasis added). However, "[a] wrongful death action is a separate action from the estate of the deceased." *Estate of Smith v. Smith ex rel. Rollins*, 130 So. 3d 508, 514 (¶16) (Miss. 2014) (quoting *Ray v. Ray*, 963 So. 2d 20, 26 (¶14) (Miss. Ct. App. 2007)). "[T]herefore, the beneficiaries of a wrongful death action for the death of the decedent may differ from the heirs of the intestate's estate." *Id.* And I agree with Judge Griffis that nothing in section 11-7-13 excludes Lisa, Kim, or Alan from the class of Delvyn's *wrongful death beneficiaries*.

¶45. Thus, Lisa, Kim, and Alan appear to qualify as wrongful death beneficiaries under the plain language of the wrongful death statute. Ordinarily, "if the words of a statute are clear and unambiguous," we simply apply "the plain meaning of the statute." *Lawson v. Honeywell Int'l Inc.*, 75 So. 3d 1024, 1027 (¶7) (Miss. 2011). However, we are bound to follow Mississippi Supreme Court precedent.[8] The Supreme Court's opinion in *Estate of*

---

[8] *See, e.g.*, *Cahn v. Copac Inc.*, 198 So. 3d 347, 358 (¶35) (Miss. Ct. App. 2015) ("[T]his Court does not have the authority to overrule or ignore [S]upreme [C]ourt precedent."); *Rivera-Guadiana v. State*, 71 So. 3d 1221, 1224 (¶14) (Miss. Ct. App. 2011) ("[W]e must follow [S]upreme [C]ourt precedent . . . .").

19

*Patterson v. Patterson*, 798 So. 2d 347 (Miss. 2001), is confusing, and it is not entirely clear what issues the Court actually decided in that case. However, I agree with the lead opinion that *Patterson* seems to hold that a natural father's failure to satisfy the requirements of section 91-1-15 not only disqualifies the natural father from recovering as a wrongful death beneficiary but also disqualifies any half-siblings through the natural father. Accordingly, I concur in the lead opinion's resolution of this issue.

## II. Waiver

¶46. The lead opinion acknowledges that the appellants complied with Mississippi Rule of Appellate Procedure 44(a) by serving copies of their appellate briefs, which clearly set out the constitutional issues raised, on the Attorney General. The lead opinion also acknowledges that the appellants challenged the constitutionality of section 11-7-13 in the memorandum of law that they filed in the chancery court. Nonetheless, the lead opinion finds that the appellants' constitutional arguments are "procedurally barred" because the appellants did not comply with Mississippi Rule of Civil Procedure 24(d) by notifying the Attorney General in the chancery court. *Ante* at ¶¶33-34. I disagree.

¶47. To begin with, no one has argued that the issue is procedurally barred. After the appellants served their opening brief on the Attorney General as required by Rule 44(a), the State did not exercise its right to respond under Rule 44(b). M.R.A.P. 44(b). In addition, the appellees addressed the merits of the appellants' constitutional arguments and have not argued that those issues are waived or procedurally barred. *See Thornton v. Freeman*, 242 So. 3d 188, 190 (¶3) (Miss. Ct. App. 2018) (noting that the issue of "waiver . . . can itself be

20

waived"). Finally, the constitutional issues were debated extensively during oral argument in this Court, and no one suggested that the issues were waived or procedurally barred. Under these circumstances, there is no reason for this Court to raise the issue sua sponte.

¶48. More important, by its terms, Rule 24(d) does not apply to this case. Rule 24(d) only requires notice to the Attorney General

> [i]n any action (1) to restrain or enjoin the enforcement, operation, or execution of any statute of the State of Mississippi by restraining or enjoining the action of any officer of the State or any political subdivision thereof, or the action of any agency, board, or commission acting under state law, in which a claim is asserted that the statute under which the action sought to be restrained or enjoined is to be taken is unconstitutional, or (2) for declaratory relief brought pursuant to Rule 57 in which a declaration or adjudication of the unconstitutionality of any statute of the State of Mississippi is among the relief requested . . . .

M.R.C.P. 24(d). The appellants do not seek to restrain or enjoin the action of any state "officer" or any "agency, board, or commission acting under state law." Nor is this an action for "declaratory relief" under Rule 57. It is a proceeding to determine heirs involving only private parties. By its plain terms, Rule 24(d) does not apply in this case.[9]

¶49. The cases that the lead opinion cites (*ante* at ¶33) are materially distinguishable. In each of those cases, the party challenging the constitutionality of the statute failed to raise the issue in the trial court and/or failed to comply with Rule 44(a) on appeal.[10] Here, as the

---

[9] The scope of Rule 24(d) is narrower than Rule 44(a), which applies in any appeal in which "the validity of any statute . . . is raised in the Supreme Court or the Court of Appeals." M.R.A.P. 44(a).

[10] *See 5K Farms Inc. v. Miss. Dep't of Revenue*, 94 So. 3d 221, 224-26 (¶¶10-20) (Miss. 2012) (appellants failed to challenge the constitutionality of the statute in the trial court and failed to comply with Rule 44(a) on appeal); *Powers v. Tiebauer*, 939 So. 2d 749, 752-55 (¶¶8-17) (Miss. 2005) (appellants failed to challenge the constitutionality of the

lead opinion acknowledges, the appellants both challenged the constitutionality of the statute in the trial court and complied with Rule 44(a) on appeal. This was sufficient to preserve the issue.

¶50. The lead opinion would hold, sua sponte, that the appellants' constitutional arguments are "procedurally barred" because they did not serve notice on the Attorney General in the trial court. However, the plain language of Rule 24(d) did not require notice in the trial court, and such notice probably would not have made any difference given that the Attorney General has not participated even after receiving notice on appeal. I respectfully disagree with the lead opinion's sua sponte invocation of an inapplicable procedural bar.

### III. Equal Protection

#### A. Perkins

¶51. Perkins argues that section 11-7-13 denies fathers of illegitimate children the right to equal protection of the laws. Specifically, he argues that the law unfairly discriminates against men because "the mother has to do nothing to inherit from the child" while the father must comply with the requirements of section 91-1-15. *Estate of Patterson*, 798 So. 2d at 351 (¶21) (McRae, J., specially concurring).

¶52. Perkins's argument ignores the mother's "unique role in childbirth" and "unique efforts in carrying a child to term." *Rainey v. Chever*, 119 S. Ct. 2411, 2413 (1999)

---

statute in the trial court); *In re D.O.*, 798 So. 2d 417, 423 (¶21) (Miss. 2001) (appellants failed to challenge the constitutionality of the statute in the trial court and failed to comply with Rule 44(a) on appeal); *Pickens v. Donaldson*, 748 So. 2d 684, 691 (¶31) (Miss. 1999) (same); *Brown v. Waldron*, 186 So. 3d 955, 961 (¶19) (Miss. Ct. App. 2016) (appellants failed to comply with Rule 44(a) on appeal).

(Thomas, J., dissenting from the denial of certiorari). Even if it served no other purpose, section 11-7-13 recognizes a valid distinction between a parent like Nelson, who chooses to carry her unborn child to term, and a parent like Perkins, who neglects the child and refuses to treat the child as his own even after the child's birth. *Id.*

¶53. Laws that recognize "inherent differences" between men and women are not per se unconstitutional. *United States v. Virginia*, 518 U.S. 515, 533 (1996). "[S]uch classifications may not be used, as they once were, to create or perpetuate the legal, social, and economic inferiority of women." *Id.* at 534 (citation omitted). Obviously, that is not what this law does. There may be additional justifications for the distinction that section 11-7-13 draws between mothers and fathers. However, I would hold that it is constitutional as applied to Perkins for the reasons given in Justice Thomas's opinion in *Rainey*, *supra*.

### B. Lisa, Kim, and Alan

¶54. The constitutional issue is more complicated with respect to Lisa, Kim, and Alan. It would be unjust and unconstitutional to exclude them from the wrongful death recovery solely as a punishment for their father's failure to satisfy section 91-1-15. *See Trimble v. Gordon*, 430 U.S. 762, 769-70 (1977); *Estate of McCullough v. Yates*, 32 So. 3d 403, 412-13 (¶31) (Miss. 2010). However, the law may be justified based on other legitimate state interests. *See In re Estate of Kimble*, 447 So. 2d 1278, 1283 (Miss. 1984).

¶55. Lisa, Kim, and Alan argue that the wrongful death statute "discriminates against the paternal siblings of the decedent *on the bases [sic] of the decedent's illegitimacy*" (emphasis added). To the extent that they argue that the statute unconstitutionally discriminates based

23

on *Delvyn's* illegitimacy, they are alleging a violation of *Delvyn's* constitutional rights rather than their own.[11] Such a claim is inconsistent with the general rule that a "plaintiff . . . must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). "Ordinarily, one may not claim standing . . . to vindicate the constitutional rights of some third party." *Barrows v. Jackson*, 346 U.S. 249, 255 (1953).

¶56. There are exceptions to the general rule against third-party standing, but only when "the party asserting the right has a close relationship with the person who possesses the right and there is a hindrance to the possessor's ability to protect his own interests." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689 (2017) (brackets omitted). In this case, there is an obvious "hindrance" to any decedent's "ability" to challenge the wrongful death statute's alleged violation of the decedent's constitutional rights. However, it is far less clear that paternal half-siblings' relationship to the decedent should enable them to litigate the decedent's constitutional rights. As the Supreme Court has recognized, in some cases, "holders of [constitutional] rights" may "not wish to assert them." *Singleton v. Wulff*, 428 U.S. 106, 113-14 (1976). Indeed, a "good and sufficient reason[]" for denying third-party standing is "the avoidance of the adjudication of rights which those not before the Court may not wish to assert." *Duke Power Co. v. Carolina Envtl. Study Grp. Inc.*, 438 U.S. 59, 80 (1978). Therefore, before granting third-party standing, "courts must be sure . . . that the litigant and the person whose rights he asserts have interests which are aligned." *Canfield*

---

[11] Under the wrongful death statute, it is irrelevant whether Lisa, Kim, and Alan are illegitimate or born of a marriage.

24

*Aviation Inc. v. Nat'l Transp. Safety Bd.*, 854 F.2d 745, 748 (5th Cir. 1988); *accord, e.g.,*

*Pony v. Cty. of Los Angeles*, 433 F.3d 1138, 1147-48 (9th Cir. 2006); *see also Elk Grove*

*Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 15 (2004) (declining to grant third-party standing

to a parent when "the interests of this parent and this child are not parallel and, indeed, are

potentially in conflict"), *abrogated on other grounds by Lexmark Int'l Inc. v. Static Control*

*Components Inc.*, 134 S. Ct. 1377, 1387 (2014).

¶57.    We can hardly "be sure" that a decedent's interests will be aligned with the interests

of his half-siblings just because they shared a father—indeed, a father who refused to treat

the decedent as his own.  Nor can we know whether a decedent would feel discriminated

against or "wish to assert" an equal protection claim in this situation.  The alleged

"discrimination" does not appear to be based on any animus against illegitimate children.

In essence, the alleged discrimination against the illegitimate decedent is this:

| Illegitimate Decedent | Legitimate Decedent |
| --- | --- |
| Paternal half-siblings are entitled to a share of any wrongful death recovery *if their father satisfies certain conditions*. | Paternal half-siblings are entitled to a share of any wrongful death recovery. |

If the decedent is married and/or has children, all wrongful death damages are distributed to

his or her spouse and/or children; thus, this distinction comes into play only if the illegitimate

decedent dies without a spouse or children.  *See* Miss. Code Ann. § 11-7-13.  Moreover, the

distinction does not affect the *total amount* of wrongful death damages.  It only means that

the wrongful death recovery for a legitimate decedent may be divided among a larger group

of relatives than the recovery for an otherwise similarly situated illegitimate decedent.  We

25

cannot say that all or most illegitimate decedents in this situation would feel aggrieved or unfairly discriminated against by the statute. Nor can we say that all or most illegitimate decedents would want their wrongful death damages to be divided among half-siblings through a father who refused to recognize the decedent during the decedent's lifetime. Finally, in this case, Delvyn passed away when he was only five months old, so there is no way to know whether Delvyn personally would have wished to assert such a claim.

¶58.   For all these reasons, we cannot "be sure" that Lisa's, Kim's, and Alan's interests "are aligned" with Delvyn's interests. *Canfield Aviation*, 854 F.2d at 748. And this may not be a right or a claim that Delvyn would "wish to assert." *Duke Power*, 438 U.S. at 80; *Singleton*, 428 U.S. at 113-14. Accordingly, I would not grant Lisa, Kim, and Alan third-party standing to assert constitutional claims on behalf of Delvyn.

¶59.   Although Lisa, Kim, and Alan lack standing to assert Delvyn's rights, they may still assert claims based on their own rights. *See Miller v. Albright*, 523 U.S. 420, 451 (1998) (O'Connor, J., concurring in the judgment). However, the wrongful death statute "does not draw a distinction based on the gender" or illegitimacy of the wrongful death beneficiaries. *Id.* Therefore, claims based on Lisa's, Kim's, and Alan's own rights "trigger[] only rational basis scrutiny." *Id.*

¶60.   Under rational basis scrutiny, a statutory classification "must be upheld if there is any conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe*, 509 U.S. 312, 320 (1993) (quoting *FCC v. Beach Commc'ns Inc.*, 508 U.S. 307, 313 (1993)). A rational basis may consist entirely of "rational speculation unsupported by

evidence or empirical data," *id.* (quoting *Beach Commc'ns*, 508 U.S. at 315), and "courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends," *id.* at 321.

¶61. Applying this deferential standard of review, the United States Supreme Court and the Mississippi Supreme Court have held that similar statutory requirements are at least rationally related to legitimate state interests such as avoiding litigation of stale or fraudulent claims. *See, e.g.*, *Lalli v. Lalli*, 439 U.S. 259, 268-76 (1978) (plurality opinion); *Estate of McCullough*, 32 So. 3d at 414 (¶35); *Estate of Kimble*, 447 So. 2d at 1283. As noted above, under rational basis scrutiny, a legislative classification must be upheld as long as it is rationally related to a legitimate state interest, even if it is based on "generalizations" and the "fit between means and ends" is "imperfect." *Heller*, 509 U.S. at 320. Based on these precedents, I would reach the same conclusion in this case and hold that the wrongful death statute is constitutional.

### IV. Evidence Regarding Lisa, Kim, and Alan

¶62. I cannot ignore one final problem with the appellants' case. The appellants' brief on appeal asserts that "there is no dispute that [Lisa, Kim, and Alan] are Robert's natural children, and thus, half-siblings to Baby Delvyn, who were living at the time of Baby Delvyn's death." In support of this claim, the appellants cite to a passage in Nelson's testimony on cross-examination. In the cited testimony, the appellants' attorney questioned Nelson about only two of the three children:

> Q    Do you dispute that [Kim and Lisa] are Robert Perkins' natural children?

27

A       I mean, I don't really know them.  I know them through Keyona. You know, she have brought them around me maybe once or twice, but I don't know them.  Atlay Phillips is the neighbor of my sister; Sheretta Nelson, who lives with Michael Cosby.  So, I mean, if they're his kids, you know, I have no proof that they're his kids.

Q       And you don't contest that they are, correct?

A       Well, I don't.

Q       You don't contest that they're his children if it were established?

A       Well, from what I hear, yeah, they're his kids.

¶63.    The *only* testimony about the third child (Alan) was as follows:

Q       Okay. Isn't it true that you told Nykeshia Green that you didn't know who Delvyn's father was?

A       I don't know a Nykeshia Green.

Q       Do you know [Alan]?

A       No, I don't.

Q       Okay. You don't know that to be Robert Perkins' son?

A       No, I don't.

¶64.    Thus, in context, Nelson merely testified that she had "no proof" that Kim and Lisa were Perkins's children, although she had "hear[d]" that they were.  Nelson did not even know Alan.  Nelson was the only witness who testified in the chancery court, and there is no other evidence in the record concerning these children.  Neither Perkins, nor the children, nor the children's mothers testified.  It does not appear that they even attended the hearing.  Nor did they submit birth certificates, DNA tests, or any other proof of paternity.  Indeed, there is no evidence in the record that Alan exists, let alone that he is Delvyn's half-brother.

28

¶65. In *In re Estate of Richardson*, 695 So. 2d 587 (Miss. 1997), "the chancellor entered an order finding that certain persons were Richardson's illegitimate children and therefore also his legal heirs" and wrongful death beneficiaries. *Id.* at 588. However, "there [was] no record that a formal hearing was ever held or that any interested party gave testimony or offered proof of paternity." *Id.* at 589. On appeal, our Supreme Court emphasized that "[i]n order to be declared heirs, the illegitimate children of . . . Richardson are required to establish paternity by clear and convincing evidence." *Id.* The Supreme Court further held that "[t]he chancellor erred in failing to hold [a formal] hearing" on that issue, and the Court reversed and remanded "for the purpose of conducting a formal hearing to determine the heirs of . . . Richardson." *Id.*

¶66. This case is different from *Richardson* in that a formal hearing was held; however, it is similar to *Richardson* in that there was no "proof of paternity." There is literally no evidence pertaining to Alan, and there is only Nelson's testimony about what she had "hear[d]" about Lisa and Kim. If this factual issue was still material to the outcome of the case, I would reverse and remand for a hearing on the issue, as the Supreme Court did in *Richardson*. However, I concur with the lead opinion that Lisa, Kim, and Alan do not qualify as wrongful death beneficiaries even assuming that they are Delvyn's half-siblings. Therefore, this factual issue is moot.

\* \* \* \* \*

¶67. For the foregoing reasons, I concur in part and in the result.

**FAIR, J., JOINS THIS OPINION. LEE, C.J., GREENLEE AND TINDELL, JJ., JOIN THIS OPINION IN PART.**

29

**WESTBROOKS, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶68. I agree in part with the lead opinion. I also agree with Judge Griffis's determination that Perkins's other children should recover as wrongful death beneficiaries. I write separately because I am of the opinion that the appellants' failure to object or file a motion under Mississippi Rule of Civil Procedure 59 in the trial court is problematic and presents a high hurdle that they cannot clear simply by appealing that issue to this Court. Accordingly, the appellants are procedurally barred from asserting their claim against the chancellor's determination of Tina as a wrongful death beneficiary, and the chancellor did not err.

¶69. In the proceeding held on December 2014, Roshida's prayer of relief was that the chancellor would find that both she and her daughter Tina were wrongful death beneficiaries. The lead opinion acknowledges that the appellants neither raised this argument before the chancellor, nor did they object.[12] *Ante* at ¶17. The record is also void of a Rule 59 motion filed by the appellants. Accordingly, I would find that the appellants waived their right to challenge the chancellor's determination because:

> [T]his Court does not review matters on appeal that were not first raised at the trial level. Before an issue can be presented to this Court, it must first be presented to the trial court. This is done by an objection. A timely objection brings the issue to the court's attention, and gives it the opportunity to address the issue.

*Wilburn v. Wilburn*, 991 So. 2d 1185, 1191 (¶13) (Miss. 2008). Because the appellants waived the issue before the chancellor, this Court should not even address whether Roshida

---

[12] The lead opinion also notes that Roshida did not raise the issue of waiver on appeal.

raised the issue of "waiver" on appeal.

¶70.    Accordingly, I would find no error in the chancellor's finding that Tina was "living" at the time of Delvyn's death.

¶71.    Therefore, I respectfully dissent in part.

**GRIFFIS, P.J., DISSENTING:**

¶72.    Mississippi Code Annotated section 11-7-13 (Rev. 2004) is the sole controlling authority to determine who is entitled to take the proceeds from a wrongful death action.

¶73.    The lead opinion makes two conclusions that I find are fundamentally flawed. First, the lead opinion agrees that "Perkins's other children cannot recover wrongful death benefits through the deceased child, Delvyn, because Perkins does not meet the requirements of section 91-1-15 (3)(a)-(c)." *Ante* at ¶26. Second, the lead opinion concludes:

> As acknowledged by the chancellor, the Mississippi Supreme Court has established that the natural father of an illegitimate child, as well as the father's "kindred," can inherit under the wrongful death statute only if the father meets the requirements of section 91-1-15. *Patterson*, 798 So. 3d at 350 (¶17) ("The wrongful death statute provides for illegitimates to inherit, but that right is tied to [section] 91-1-15.").

*Ante* at ¶27.

¶74.    Neither of these conclusions are supported by section 11-7-13. Instead, the chancellor and the lead opinion rely on *Patterson*. The question is whether the decision in *Patterson* should govern this case, when it is contrary to the clear and unambiguous language of section 11-7-13.

¶75.    Every wrongful death case, and the consideration of section 11-7-13, must start with *Long v. McKinney*, 897 So. 2d 160 (Miss. 2004). There, the supreme court criticized its

31

earlier decisions in wrongful death cases, which included *Patterson*, and ruled:

> ***No area of the law has historically provided more muddled, misquoted and misunderstood procedural rules, than civil claims for wrongful death.*** The blame for the perennial scrap over the rules can be traced to at least two sources.
>
> First, although the issue has been debated, the American judiciary – federal and state – has failed to squarely address the question of whether substantive claims for wrongful death originated in the common law, rendering them subject to substantial judicial discretion; or are creatures of statute, requiring strict, statutory construction.
>
> Secondly, it appears that in the waning years of the Nineteenth Century, our own wrongful death statute (the "Statute") took a wrong turn into procedural territory where it had no license to travel. When one branch of government (well-intentioned though it may be) crosses the line into the purview of another, the balance of powers necessary for efficient and effective government is upset. So it was with the Statute. As a result, ***this Court has, for over a century, attempted to provide procedural guidance mislabeled as statutory interpretation; much like attempting to place a square peg into a round hole. Consequently, little progress has been made in settling many troubling issues related to wrongful death litigation. The same issues and problems continually appear, and have been addressed on an ad hoc basis, leaving little in the way of dependable precedent***.

*Id.* at 162-63 (¶¶1-3) (emphasis added). The court then used *Long* as "an opportunity to address and clarify several of these problems, and to provide guidance for these issues to the bar and judiciary." *Id.* at (¶4).

¶76.   Here, the issue addressed was not an issue addressed in *Long*. But, like *Long*, this case considers an issue that was previously "muddled, misquoted and misunderstood." *Id.* at (¶1). Indeed, this case is an opportunity to deal with one of those "troubling issues related to wrongful death litigation." *Id.* at (¶3). I urge the supreme court to look closely at this case and provide "dependable precedent." *Id.*

¶77.   Any review of section 11-7-13 begins with the supreme court's long held admonition that, "[o]n appellate review, we ***strictly construe*** Mississippi's wrongful death statute." *Pannell v. Guess*, 671 So. 2d 1310, 1313 (Miss. 1996) (emphasis added).

¶78.   The language of section 11-7-13 determines who may take the proceeds of a wrongful death action:

> [I]f the deceased has no husband, nor wife, nor children, the damages shall be distributed equally to the father, mother, brothers and sisters, or such of them as the deceased may have living at his or her death. . . . ***There shall not be, in any case, a distinction between the kindred of the whole and half blood of equal degree. The provisions of this section shall apply . . . to the mother on account of the death of an illegitimate child . . . , and they shall have all the benefits, rights and remedies conferred by this section on legitimates.*** The provisions of this section shall apply . . . to the natural father on account of the death of the illegitimate child . . . , and they shall have all the benefits, rights and remedies conferred by this section on legitimates, if the survivor has or establishes the right to inherit from the deceased under Section 91-1-15.

(Emphasis added).

¶79.   Because Delvyn had "no husband, nor wife, nor children," section 11-7-13 provides that "the damages shall be distributed equally to [Delvyn's] father, mother, brothers and sisters, or such of them as the deceased may have living at his or her death." This sentence gives Delvyn's "brothers and sisters" – Lisa, Kim and Alan – equal right to the wrongful death damages as Delvyn's mother and father.

*I.     Mother*

¶80.   Roshida Nelson, as Delvyn's mother, is certainly a wrongful death beneficiary under section 11-7-13.

*II.     Father*

33

¶81.    Robert Perkins, as Delvyn's father, may be a wrongful death beneficiary.  For Robert

Perkins to take as a wrongful death beneficiary, section 11-7-13 says that:

> The provisions of this section shall apply . . . ***to the natural father*** on account
> of the death of the illegitimate child . . . , and they shall have all the benefits,
> rights and remedies conferred by this section on legitimates, ***if the survivor
> has or establishes the right to inherit from the deceased under Section
> 91-1-15.***

(Emphasis added).

¶82.    Section 11-7-13 specifically incorporates section 91-1-15, but only in the analysis of

the "natural father."  It clearly says that "the provisions of this section shall apply . . . ***to the***

***natural father on account of the death of the illegitimate child*** . . . if the survivor has or

establishes the right to inherit from the deceased under Section 91-1-15." (Emphasis added).

This sentence only applies to Perkins, as Delvyn's natural father.  This sentence in section

11-7-13 cannot be read to require section 91-1-15 be applied to anyone but Delvyn's natural

father.  *This sentence simply does not apply* to Delvyn's mother or his brothers and sisters.

¶83.    Section 11-7-13 says that, for Perkins to be a wrongful death beneficiary as Delvyn's

father, Perkins must also show that he has acted in a socially responsible manner.  Thus, as

the natural father of an illegitimate child, Perkins must establish that he can "establish[] the

right to inherit from the deceased under Section 91-1-15."

¶84.    Section 91-1-15 deals with the right to inherit from illegitimate children.  It is in the

title on "Trusts and Estates," the chapter on "Descent and Distribution," and is titled

"Descent among illegitimates; definitions." If section 11-7-13 was intended to be interpreted

as the lead opinion has, the legislature could have simply incorporated the laws of descent

34

and distribution to establish the wrongful death beneficiaries in a wrongful death action.[13] This is not what the legislature did. It is important that the Legislature, in section 11-7-13, chose not to treat the "kindred" of the natural father the same as it did in 91-1-15(3)(d)(i).

¶85.    Section 11-7-13 requires that the decedent's "natural father" be subject to an analysis of the right of inheritance under section 91-1-15. As a result, section 11-7-13 "addresses the inequity of a natural father of an illegitimate child benefitting from a wrongful-death action when he has failed to acknowledge and support his child." *LePori v. Welch*, 93 So. 3d 66, 69 (¶9) (Miss. Ct. App. 2012).

¶86.    I concur with the determination that, under section 11-7-13, the chancellor correctly considered Perkins's right to inherit from Delvyn under section 91-1-15. I agree that Perkins is not a proper wrongful death beneficiary of Delvyn under section 11-7-13.

    *III.    Siblings*

¶87.    Section 11-7-13 requires that Delvyn's half siblings are his wrongful death beneficiaries. Because Lisa, Kim, and Alan share a biological father, they are Delvyn's half siblings.

¶88.    Section 11-7-13 requires that Delvyn's wrongful death damages "shall be distributed ***equally*** to the father, mother, ***brothers and sisters***, or such of them as the deceased may have living at his or her death." (Emphasis added). The next sentence provides that "[t]here shall not be, in any case, a distinction between the kindred of the whole and half blood of equal

---

[13] For example, section 91-1-15(3)(d)(i) provides that "***The natural father of an illegitimate and his kindred*** shall not inherit: From or through the child unless the father has openly treated the child as his, and has not refused or neglected to support the child . . . ." (Emphasis added).

degree." Miss. Code Ann. § 11-7-13. Thus, Lisa, Kim, and Alan are ***required by the wrongful death statute*** to be treated no differently than Delvyn's mother.

¶89. The lead opinion affirms the chancellor's ruling that "Perkins's other children cannot recover wrongful death benefits through the deceased child, Delvyn, because [Perkins] does not meet the requirements of section 91-1-15 (3)(a)-(c)." There is simply no authority in section 11-7-13 to support this conclusion.

¶90. Here, Lisa, Kim, and Alan have been excluded as Delvyn's wrongful death beneficiaries simply because Perkins was excluded under section 91-1-15. Although there is specific statutory language that says Delvyn's natural father may be excluded pursuant to section 91-1-15, there is no language that would exclude Delvyn's siblings.

¶91. Lisa, Kim, and Alan are "half blood" siblings of Delvyn. Thus, they are Delvyn's ***statutory*** wrongful death beneficiaries as Delvyn's "brothers and sisters." They obtained the status as his wrongful death beneficiaries due to their blood relationship with Delvyn. Section 11-7-13 clearly and specifically provides that "[t]here shall not be, in any case, a distinction between the kindred of the whole and half blood of equal degree."

¶92. Section 11-7-13 provides that Delvyn's father may be excluded under section 91-1-15, but section 11-7-13 may not be read to exclude or condition Delvyn's half siblings' rights to their common parent's (the natural father's) status.

¶93. I am of the opinion that chancellor's exclusion of Lisa, Kim, and Alan was manifestly wrong and clearly erroneous. I would reverse the judgment that concludes Lisa, Kim, and Alan are not proper wrongful-death beneficiaries under section 11-7-13 and remand for a

hearing on the issue of whether Lisa, Kim, and Alan were Delvyn's half siblings and are therefore entitled to a portion of the settlement proceeds.

**WESTBROOKS AND TINDELL, JJ., JOIN THIS OPINION IN PART.**